UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                          :
J-WAY SOUTHERN, INC.,                     :          CASE NO. 1:17-cv-1167
                                          :
            Plaintiff,                    :
                                          :
    vs.                                   :          OPINION & ORDER
                                          :          [Resolving Docs. 51, 52, 53]
RIVER ROAD CONSTRUCTION, INC.,            :
                                          :
            Defendant.                    :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This case arises after the breakdown of a dredging vessel.

Plaintiff J-Way Southern, Inc. ("J-Way") leased a dredging vessel to River Road Construction, Inc. ("River Road"). After the dredging vessel broke down, J-Way sued River Road for breach of contract and negligence, claiming that River Road breached a contractual duty to properly repair and maintain the vessel.[1] In response, River Road counterclaimed for breach of contract and breach of implied warranty, asserting J-Way failed to provide River Road a dredging vessel fit for its intended use.[2] Plaintiff J-Way now moves for summary judgment on River Road's counterclaims.[3]

River Road also joined third party, Liberty Mutual Insurance Company ("Liberty Mutual"). River Road seeks a declaratory judgment that under two insurance policies, Liberty Mutual owes River Road a duty to indemnify and a duty to defend it against J-Way's claims.[4] River Road and Liberty Mutual have filed cross motions for summary judgment on these issues.[5]

---

[1] Doc. 1.
[2] Doc. 6.
[3] Doc. 51. River Road opposes. Doc. 61. J-Way replies. Doc. 69.
[4] Doc. 6.
[5] Docs. 52, 53. Both have filed oppositions (Docs. 62, 63) and replies (Docs. 65, 66).

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff J-Way's motion for summary judgment; **GRANTS IN PART AND DENIES IN PART** Liberty Mutual's motion for summary judgment; and **GRANTS IN PART AND DENIES IN PART** River Road's motion for summary judgment.

## I. BACKGROUND

### A. The Dredging Vessel

Plaintiff J-Way owns an 8-inch Ellicott Swinging Ladder Dredge; 4,000 feet of 8-inch dredge pipe; and a fusion machine for 8-inch dredge pipe (together the "dredging vessel").[6]

On October 20, 2016, Defendant River Road entered into a Charter/Rental Agreement ("the lease") with Plaintiff J-Way to lease the dredging vessel.[7] Defendant River Road planned to use the dredging vessel in connection with a Mississippi dredging project.[8]

On November 16, 2016, J-Way delivered the dredging vessel to River Road in Mississippi.[9]

River Road did not conduct an on-hire survey inspection before J-Way delivered the dredging vessel.[10] The lease gave Defendant River Road the right to a survey inspection by "a qualified independent surveyor acceptable" to both River Road and J-Way.[11] River Road's owner Jens Lorenz testified that River Road did not usually perform on-hire third-party survey inspections for smaller equipment like the dredging vessel.[12]

---

[6] Doc. 54-2 at 1, 7.
[7] *Id.* at 1.
[8] *Id.*
[9] Doc. 51-4 at 31:25-32:9.
[10] Doc. 51-2 at 113:6-114:11.
[11] Doc. 54-2 at ¶ 7.
[12] Doc. 51-2 at 114:2-11.

Upon delivery of the dredging vessel on November 16, 2016, River Road inspected the vessel and discovered that the ladder cylinder was cracked and leaking hydraulic oil.[13] River Road was able to fix these issues that day.[14] River Road accepted delivery of the dredging vessel.[15]

On November 28, 2016, River Road began using the dredging vessel for its Mississippi project and discovered that the water pump was leaking.[16] Between November 28, 2016 and February 7, 2017, other problems emerged that affected the dredging vessel's performance.[17]

By February 7, 2017, River Road stopped using the dredging vessel and rented a replacement dredging vessel.[18]

**B. J-Way's Lawsuit against River Road**

On June 5, 2017, J-Way sued River Road for breach of contract and negligence.[19] J-Way sues River Road for unrepaired damage to the dredging vessel and for rent allegedly owed under the lease.[20] J-Way generally alleges that River Road had a contractual duty to repair the vessel and failed to properly maintain the dredging vessel in a good state of repair.[21]

River Road filed a counterclaim against J-Way for breach of contract and breach of implied warranty.[22] River Road alleges that J-Way breached the lease by failing to provide a dredging vessel fit for its intended purpose.[23]

J-Way moves for summary judgment on River Road's counterclaims.[24] No party has moved for summary judgment on J-Way's claims against River Road.

---

[13] Doc. 51-4 at 36:13-37:23.
[14] *Id.* at 38:6-39:25.
[15] Doc. 51-2 at 116:11-13.
[16] Doc. 51-4 at 44:5-21.
[17] *Id.*at 45:18-46:2, 50:6-51:17, 67:3-68:24, 78:9-79: 21,  82:13-85:14, 86:3-89:19, 90:4-94:6.
[18] *Id.* at 97:19-99:4; Doc. 51-2 at 124:16-17.
[19] Doc. 1.
[20] *Id.* at ¶¶ 33, 34, 39, 40.
[21] *See* Doc. 1.
[22] Doc. 6.
[23] *Id.*
[24] Doc. 51.

**B. River Road's Insurance Policies from Liberty Mutual**

After J-Way filed its suit, River Road requested defense and indemnity from Liberty Mutual under two policies: (1) a Commercial Marine Hull policy ("Hull policy"), having policy number LIUH-00037-01; and (2) a Marine General Liability policy ("Marine policy"), having policy number 3HAA98E6001.[25]  Both policies covered the time of the J-Way claim and both covered the period between March 14, 2016 and March 14, 2017.[26]

In two August 28, 2017 and September 5, 2017 letters, Liberty Mutual denied a defense under the Hull and Marine policies.[27]  Liberty Mutual also denied a duty to indemnify under the Marine policy, but reserved its rights with respect to its duty to indemnify under the Hull policy.[28]  Liberty Mutual stated that it had insufficient information to make a coverage determination regarding indemnity under the Hull policy.[29]

River Road then joined Liberty Mutual as a third-party defendant.  In its claim against Liberty Mutual, River Road seeks a declaratory judgment that, under both policies, Liberty Mutual owes it a duty to defend and duty to indemnify in the underlying suit with J-Way.[30]  River Road also brings bad faith claims against Liberty Mutual.[31]

Liberty Mutual and River Road both moved for summary judgment on River Road's claims against Liberty Mutual.

---

[25] Docs. 63-1, 63-2.

[26] Doc. 19-1 at 4; Doc. 19-2 at 4.

[27] Doc. 63-1 at 4-9; Doc. 63-2 at 2.

[28] Doc. 63-1 at 10; Doc. 63-2 at 2.

[29] *See supra* note 28.

[30] River Road also brought in third-party defendant AGCS Marine Insurance Company ("AGCS").  Doc. 6 at 16-18; Doc. 21. River Road sought a declaratory judgment that AGCS has a duty to defend and indemnify River Road in its underlying suit with J-Way.  Doc. 6 at 16-18.  River Road and AGCS later filed a notice of settlement.  Doc. 67.  The Court has held that AGCS's motion for summary judgment is now moot.

[31] Doc. 6.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[32] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[33] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not mere allegations or denials in pleadings—showing a triable issue of fact.[34] The non-moving party must show more than some doubt as to the material facts in order to defeat a motion for summary judgment.[35] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[36]

In the context of summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[37] "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."[38]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible evidence in the record directly contradicts that version.[39] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[40]

---

[32] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[34] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[35] *Id.* at 586.
[36] *Killion*, 761 F.3d at 580 (internal citations omitted).
[37] Fed. R. Civ. P. 56(c)(2).
[38] *Id.* (2010 Advisory Committee comments).
[39] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[40] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

# III. ANALYSIS

## A. River Road's Counterclaims against J-Way

The Court finds that there is no genuine dispute of material fact regarding River Road's breach of contract claim. However, issues of material fact exist regarding River Road's counterclaim for breach of implied warranty.

### 1. Breach of Contract

Under Ohio law,[41] a breach of contract claim exists when: (1) "a binding contract or agreement was formed;" (2) "the nonbreaching party performed its contractual obligations;" (3) "the other party failed to fulfill its contractual obligations without legal excuse;" and (4) "the nonbreaching party suffered damages as a result of the breach."[42]

The interpretation of written contracts is a question of law.[43] No factual determinations are needed to interpret an unambiguous contract.[44]

J-Way only disputes the third element of River Road's breach of contract counterclaim. J-Way argues that River Road's delivery acceptance of the dredging vessel constituted full performance of J-Way's obligation to provide River Road a "seaworthy" vessel.[45] In general, J-Way argues that River Road had the contractual right to have an independent survey inspection of the equipment.[46] When River Road declined its right to have such a survey inspection, J-Way says River Road lost the right to complain of any defects.[47]

---

[41] Since the parties do not dispute that Ohio law applies to River Road's claims against J-Way, the Court applies it here. *See Kuns v. Ford Motor Co.*, 926 F.Supp.2d 976, 982 (N.D. Ohio 2013), *aff'd*, 543 Fed. App'x. 572 (6th Cir. 2013) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010)).

[42] *See Carbone v. Nueva Constr. Grp., L.L.C.*, 83 N.E.3d 375, 380 (Ohio Ct. App. 2017) (citing cases).

[43] *Oden v. Associated Materials, Inc.*, 945 N.E.2d 1123, 1126 (Ohio Ct. App. 2010).

[44] *Id.*

[45] Doc. 51 at 9-11; Doc. 69 at 6-10.

[46] Doc. 51 at 10; Doc. 69 at 7.

[47] *See supra* note 46.

River Road, however, argues that while its acceptance of the dredging vessel may have relieved J-Way of its contractual duty to provide a "seaworthy" vessel, it did not contractually relieve J-Way of its duty to provide a vessel in "good state of repair in accordance with commercial marine practices."[48]

River Road's distinction between a "seaworthy" vessel and a vessel in "good state of repair" is untenable.

The Court looks to general maritime law to define "seaworthy."[49]

Under general maritime law, whether a vessel is "seaworthy" depends on its "physical fitness to perform the particular voyage."[50] "Seaworthy" is a relative term and is "depend[e]nt upon the vessel involved and the service in which it is to be employed."[51] To be seaworthy, "a ship must be sufficiently strong and staunch and equipped with the appropriate appurtenances to allow it to safely engage in the trade for which it was intended."[52] "Put another way, the vessel must be fit for the use anticipated."[53] In *Martin v. Southwark*, for example, the Supreme Court found that the furnishing of a vessel in good order and repair such that the vessel could perform its intended business was necessarily included within the duty to provide a seaworthy vessel.[54]

Here, the lease specifically stated that River Road's acceptance of the dredging vessel at delivery would "constitute full performance of [J-Way's] obligations to provide seaworthy vessel

---

[48] Doc. 61 at 5-6 (referring to Doc. 54-2 at ¶ 9). River Road also argues that its failure to perform an on-hire survey does not relieve J-Way of its express contractual duties. Doc. 61 at 7. However, this argument is not responsive since J-Way only argues that River Road's failure to perform an on-hire survey excludes the existence of any implied warranty. *See* Doc. 51 at 10.

[49] "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or *unless some other meaning is clearly intended from the face or overall contents of the instrument*." *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978) (emphasis added). Given that "seaworthy" appears in a lease for a maritime vessel, it only makes sense to the Court that general maritime law should explain what being "seaworthy" entails. The parties have not argued or shown that Ohio law defines seaworthiness differently.

[50] *Morrisey v. S. S. A. & J. Faith*, 252 F. Supp. 54, 58-59 (N.D. Ohio 1965).

[51] *Texaco, Inc. v. Universal Marine, Inc.*, 400 F. Supp. 311, 320 (E.D. La. 1975).

[52] *Id.*

[53] *Id.*

[54] 191 U.S. 1, 16 (1903).

hereunder."[55]  There is no genuine dispute of material fact that River Road accepted the dredging vessel upon delivery.[56]  As a result, J-Way satisfied its duty to provide a seaworthy vessel.  Because the duty to provide a seaworthy vessel necessarily includes the duty to provide a vessel in good state of repair such that it can perform its stated dredging functions, J-Way was also contractually relieved of that latter duty upon River Road's acceptance.

Thus, there is no genuine dispute of material fact regarding River Road's breach of contract counterclaim.  The Court **GRANTS** J-Way's motion for summary judgment on that counterclaim.

### 2. Breach of Implied Warranty

J-Way next argues River Road cannot bring a breach of implied warranty counterclaim because (1) the lease disclaims all implied warranties and (2) River Road failed to inspect the dredging vessel prior to entering into the lease.[57]

In this case, River Road claims that J-Way breached an implied warranty of merchantability.[58]  Under Ohio law, an implied warranty of merchantability is included in every lease.[59]  To be merchantable under such implied warranty, the dredging vessel must "[p]ass without objection in the trade under the description in the lease agreement."[60]  However, Ohio Rev. Code Ann. § 1310.21 provides for situations where an implied warranty is excluded.

The Court finds that there is a genuine dispute of material fact on whether an implied warranty is excluded in this case.

---

[55] Doc. 54-2 at ¶ 9.
[56] Doc. 51-2 at 116:11-13.
[57] Doc. 51 at 12-14.
[58] Doc. 61 at 8.  As a result, the Court does not address J-Way's arguments that River Road fails to show a breach of implied warranty of fitness.
[59] *A. LoPresti & Sons, Inc. v. Gen. Car & Truck Leasing Sys., Inc.*, 79 F. App'x 764, 768 (6th Cir. 2003).
[60] Ohio Rev. Code Ann. § 1310.19(B)(1).

**a.** ***No Disclaimer of Implied Warranties.***

First, J-Way argues that its lease with River Road disclaimed any implied warranties. J-Way points to paragraph 7 in the lease stating that River Road was accepting the dredging vessel in "its condition" and that J-Way did not "warrant the suitability of this equipment for [River Road's] intended purpose."[61] River Road, on the other hand, argues that any such disclaimer was not valid because it was not conspicuous.[62]

The Court agrees with River Road.

Exclusion of implied warranties in lease agreements are only permitted if the language (1) mentions "merchantability;" (2) is in writing; and (3) is conspicuous.[63] Conspicuous means "a reasonable person" ought to have noticed it.[64] Conspicuous language could include language set off by a heading or contrasting type, font, color, size, symbols, or marks.[65]

Here, the lease does not mention merchantability. Moreover, the paragraph 7 lease language is not conspicuous. The paragraph 7 lease language is not set off by any contrasting type, font, color, size, symbols, or marks. There is no heading identifying the paragraph as a disclaimer. No reasonable person would have noticed paragraph 7 of the lease and understood it to be a disclaimer of an implied warranty of merchantability.

Therefore, J-Way did not validly disclaim the implied warranty of merchantability.

**b.** ***Exclusion of Implied Warranty for Defects an Examination Should Have Revealed***

Second, J-Way argues that because River Road refused to examine the dredging vessel before entering into the lease, Ohio law excludes any implied warranty in this case.[66]

---

[61] Doc. 51 at 13 (citing Doc. 54-2 at ¶ 7).
[62] Doc. 61 at 10.
[63] Ohio Rev. Code Ann. § 1310.21(B); *A. LoPresti & Sons*, 79 F. App'x at 768.
[64] Ohio Rev. Code Ann. § 1301.201(B)(10).
[65] *Id.* § 1301.201(B)(10)(a)-(b).
[66] Doc. 51 at 13.

Ohio Rev. Code Ann. § 1310.21(C)(2) states that "[i]f the lessee before entering into the lease contract has examined the goods or the sample or model as fully as desired or has refused to examine the goods, there is no implied warranty with regard to defects that an examination in the circumstances should have revealed."

Importantly, J-Way has the burden of showing no material issue of fact on the implied warranty counterclaim.

To meet this burden, J-Way puts forth evidence that River Road limited its inspection of the dredging vessel to viewing two still photographs of the dredge prior to entering into the lease.[67] But this evidence does not unequivocally demonstrate to the Court that River Road examined the dredging vessel as fully as desired prior to entering into the lease, or flatly refused to do so.

With respect to whether the defects would have been discovered upon examination, however, J-Way has put forth no evidence.[68] The evidence the Court does consider shows there is a genuine dispute of fact on this issue. Lorenz admitted at his deposition that he was unsure what defects could or could not have been discovered upon examination of the vessel at delivery.[69]

Thus, there is still a genuine dispute of material fact as to whether any implied warranty is excluded from the lease. The Court therefore **DENIES** J-Way's motion for summary judgment on River Road's breach of implied warranty claim.

---

[67] *Id*. (citing Doc. 51-2 at 88:5-25). River Road argues that it did inspect the dredging after signing the lease. Doc. 61 at 9. This is irrelevant since the Ohio statute contemplates exclusion of the implied warranty when the lessee examines the goods "*before* entering into the lease." *See* Ohio Rev. Code Ann. § 1310.21(C)(2) (emphasis added).

[68] J-Way's only argument is to challenge the evidentiary sufficiency of River Road's evidence showing the defects would not have been revealed upon examination. Doc. 69 at 5-6. Lorenz testified at his deposition and asserts in a declaration that the defects could not have been discovered by an inspection or an on-hire survey before the dredging vessel was put into service. Doc. 61-1 at ¶¶ 8-9; Doc. 51-2 at 116:11-117:6. J-Way argues that these statements are improper opinion testimony. Doc. 69 at 5-6. However, even if the Court were to disregard these statements as either lay or expert opinion because it lacks a proper basis of knowledge, there is still a genuine dispute of material fact on this issue, as explained above.

[69] *See* Doc. 51-2 at 118:20-119:1.

## B. River Road's Third-Party Claims against Liberty Mutual

### 1. Hull Policy

Because both River Road and Liberty Mutual agree that Louisiana law governs the Hull Policy, the Court applies Louisiana law to this analysis.[70]

Under Louisiana law, courts must construe an insurance policy to give effect to the parties' intent.[71] Any policy ambiguity is construed in favor of coverage.[72] However, if the provisions of the insurance policy are clear and unambiguous, courts must enforce the policy language as written.[73]

Whether an insurance policy is clear or ambiguous is a question of law.[74] Courts should not interpret an insurance policy "in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[75] Courts "should not strain to find ambiguity where none exists."[76]

In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage.[77]

### a. *Duty to Indemnify*

The Court finds that under the Hull policy, Liberty Mutual has a duty to indemnify River Road in its suit with J-Way, subject to certain limitations explained here.

---

[70] *See Buckner v. United States*, No. 4:13-CV-02469, 2015 WL 5023079, at *8 (N.D. Ohio July 1, 2015), *report and recommendation adopted*, No. 4:13CV2469, 2015 WL 5023069 (N.D. Ohio Aug. 21, 2015); *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-CV-118, 2017 WL 4987663, at *5 (S.D. Ohio Aug. 16, 2017).

[71] La. Civ. Code art. 2045.

[72] *See* La. Civ. Code art. 2056; *Louisiana Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993).

[73] *See* La. Civ. Code art. 2046.

[74] *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007).

[75] *McQuirter v. Rotolo*, 77 So. 3d 76, 81 (La. Ct. App. 2011); *see also North Am. Treatment Sys., Inc.*, 943 So. 2d 429, 443 (La. Ct. App. 2006).

[76] *Rambo v. Walker*, 722 So. 2d 86, 89 (La. Ct. App. 1998).

[77] *Tunstall v. Stierwald*, 809 So. 2d 916, 921 (La. 2002).

Liberty Mutual does not disagree on this point. Liberty Mutual only argues that the question of its duty to indemnify is not yet ripe for the Court's consideration since it has not yet denied River Road indemnity coverage.[78]

The Court disagrees with Liberty Mutual. Although River Road never explicitly says so, it appears to seek a declaratory judgment that Liberty Mutual owes it a duty to indemnify and duty to defend under the Hull policy.[79] In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, the Supreme Court held that in a declaratory judgment action, a ripe controversy exists when the duty to defend and indemnify are both at issue.[80] As a result, the issue of Liberty Mutual's duty to indemnify is ripe for this Court's consideration.

Under the Hull policy's "Additional Perils (Inchmaree)" section, Liberty Mutual must indemnify River Road for

> loss of or damage to the Vessel directly caused by . . . Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder; **Negligence of Masters, Officers, Crew or Pilots; provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them.** Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.[81]

Liberty Mutual does not dispute that if J-Way were awarded damages in this negligence suit, this provision would require Liberty Mutual to indemnify River Road.[82] Liberty Mutual only argues that coverage may be barred if further factual development in this litigation shows that the loss or damage resulted from River Road's "want of due diligence."[83]

---

[78] Doc. 52-1 at 7-8; Doc. 63 at 5-6; Doc. 66 at 5-6.
[79] Doc. 6 at 14-15; Doc. 53 at 16; Doc. 65 at 2, 11.
[80] 312 U.S. 270, 274 (1941).
[81] Doc. 19-2 at 12-13 (emphasis added).
[82] Doc. 63 at 6.
[83] Doc. 52-1 at 7-8; Doc. 63 at 5-6; Doc. 66 at 5-6; Doc. 63-1 at 10.

The Court agrees with Liberty Mutual. The policy's clear and unambiguous language indicates that Liberty Mutual has a duty to indemnify River Road for loss or damage caused to the dredging vessel due to the negligence of *River Road's crew*, provided such loss or damage did not result from the want of due diligence of River Road itself as the assured party.[84]

Liberty Mutual also argues that its duty to indemnify under the Hull policy does not extend to potential damages for J-Way's lost rental income.[85] River Road does not directly address this, but the Court agrees with Liberty Mutual.

The Hull policy is a first-party property insurance that only contemplates coverage for property damage or loss.[86] Because purely economic losses, such as rental income loss, is not property damage or loss under Louisiana law,[87] Liberty Mutual has no duty under the Hull policy to indemnify River Road for J-Way's potential lost rental income damages in this suit.

Lastly, Liberty Mutual argues that the Protection and Indemnity ("P&I") portion of the Hull policy does not impose a duty to indemnify.[88] River Road does not oppose this argument. The Court finds that none of the fourteen enumerated covered risks under the P&I portion of the Hull policy applies to the issues here,[89] and therefore also finds no duty to indemnify under the P&I portion of the Hull policy.

In summary, Liberty Mutual has a duty to indemnify River Road under the Hull policy for J-Way's property damages, but not for lost rental income damages, if J-Way is awarded damages

---

[84] *See Employers Ins. of Wausau v. Avondale Shipyards, Inc.*, No. CIV. A. 82-4034, 1991 WL 488358, at *3 (E.D. La. Aug. 26, 1991) (finding negligence of construction supervisor and builder was insured peril, given that loss was not due to "want of due diligence" on the owner or assured's part); *Walker v. Travelers Indem. Co.*, 289 So. 2d 864, 871 (La. Ct. App. 1974) (finding that in similar indemnity provision, "[t]he only limitation on this coverage is the phrase 'provided such loss or damage had not resulted from want of due diligence by the owner of the Yacht or by the insured.'").

[85] Doc. 52-1 at 9; Doc. 63 at 8; Doc. 66 at 6-7.

[86] *Chet Morrison Contractors, L.L.C. v. Onebeacon Am. Ins. Co.*, No. CIV.A. 14-1958, 2015 WL 1221616, at *4 (E.D. La. Mar. 17, 2015).

[87] *CMP Coatings, Inc. v. Tokyo Marine & Nichido Fire Ins. Co., LTD*, No. CIV.A. 10-4277, 2012 WL 3901625, at *3 (E.D. La. Sept. 6, 2012).

[88] Doc. 52-1 at 10-12; Doc. 66 at 7-8.

[89] Doc. 19-2 at 17-20.

in its negligence suit and no evidence suggests that the damage to the dredging vessel resulted from River Road's want of due diligence..

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** River Road's motion for summary judgment on the issue of Liberty Mutual's duty to indemnify under the Hull policy, including the P&I portion, and **DENIES IN PART AND GRANTS IN PART** Liberty Mutual's motion for summary judgment on the same.

### b.  *No Duty to Defend*

Neither the Hull policy nor the P&I portion of the Hull policy impose a duty to defend.

To start, the Hull policy does not create a duty to defend here.  River Road argues that the Hull policy implies a duty to defend because it insures River Road for damage to the dredging vessel that results from negligence.[90]  Liberty Mutual counters that the policy includes no actual language imposing a duty to defend this action.[91]

The Court agrees with Liberty Mutual.  As Louisiana courts have held, Hull policies are first-party property insurance that covers damage to or loss of a vessel and do not impose a duty to defend unless specifically noted in the policy.[92]  Nowhere in the Hull policy is there any language about a duty to defend.[93] River Road points to none.

Moreover, River Road's cases in support of a duty to defend in the Hull policy are inapposite.  Those cases only concern the *scope* of the duty to defend, not whether there was a duty to defend in the first place.[94]

---

[90] Doc. 53 at 9-12; Doc. 65 at 2-3.

[91] Doc. 52-1 at 8-9; Doc. 63 at 7-8.

[92] *Chet Morrison Contractors*, 2015 WL 1221616, at *4; *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 638 So. 2d 1132, 1137 (La. Ct. App. 1994); *Cont'l Ins. Co. v. L & L Marine Transp., Inc.*, No. CV 14-2967, 2016 WL 301681, at *5 (E.D. La. Jan. 25, 2016).

[93] *See* Doc. 19-2.

[94] *Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993); *Vaughn v. Franklin*, 785 So. 2d 79, 85-86 (La. Ct. App. 2001); *Motorola, Inc. v. Associated Indem. Corp.*, 878 So. 2d 824, 836-37 (La. Ct. App. 2004); *Prestage v. Clark*, 723 So. 2d 1086, 1092 (La. Ct. App. 1998); *Mossy Motors, Inc. v. Cameras Am.*, 898 So. 2d 602, 607 (La. Ct. App. 2005). (policy had clear and unambiguous language imposing a duty to defend in certain circumstances).

The P&I portion of the Hull policy also does not impose a duty to defend here.

River Road points to the following language in the P&I portion of the Hull policy to argue that Liberty Mutual has a duty to defend it in this action:

> The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth: . . .

> (14) *Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein*, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.[95]

Liberty Mutual notes that this language does not even mention any duty to defend.[96] Even if the Court were to construe one, Liberty Mutual argues that River Road has nevertheless not shown that such a duty would be triggered in this case.[97]

The Court again agrees with Liberty Mutual. As courts have held, P&I policies do not ordinarily create a duty to defend.[98] Here, the language of the P&I policy only requires Liberty Mutual to pay defense costs incurred and paid by River Road. Even then, the language only requires Liberty Mutual to pay for defense costs for liabilities actually insured by the P&I policy.

As Louisiana courts interpreting similar language have held, this language does not create an additional duty to defend.[99] River Road's cases likewise do not appear to impose any such duty

---

[95] Doc. 19-2 at 17, 20 (emphasis added).
[96] Doc. 52-1 at 10-12; Doc. 63 at 8-9; Doc. 66 at 7-8.
[97] Doc. 52-1 at 8-9; Doc. 63 at 9; Doc. 66 at 8.
[98] *Gabarick v. Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 552-53 (5th Cir. 2011); *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 787 (5th Cir. 1997).
[99] *See Gabarick v. Laurin Mar. (Am.), Inc.*, No. CIVA 08-4007, 2009 WL 43096, at *4 (E.D. La. Jan. 7, 2009); *Bd. of Comm'rs of Port of New Orleans v. M/V Rachael Guidry*, 425 F. Supp. 661, 663-64 (E.D. La. 1977) ("Under a P and I Policy of this type, the policy does not obligate the insurer to defend the insured. But this merely means that, as between the insurer and the insured, it is the duty of the insured to defend. After it does so, the insurer is liable for costs and expenses, incurred . . . ." (internal quotations and citations omitted)); *see also Blair v. Suard Barge Servs., Inc.*, No. Civ.A. 03-909, 2004 WL 325428, at *8 (E.D. La. 2004).

to defend.[100]  Even if the Court were to construe a duty to defend in the P&I policy language, River Road has not established that any of the enumerated insured liabilities in the P&I policy apply to trigger the duty to defend or the requirement to pay defense costs.

Thus, the Court **GRANTS** Liberty Mutual's motion for summary judgment on the duty to defend in the Hull policy and **DENIES** River Road's motion for summary judgment on the same.

## 2. Marine Policy

The Court finds that the Marine policy also does not impose on Liberty Mutual a duty to indemnify or duty to defend in this case.

### a. *New York Law Governs the Marine Policy*

As an initial matter, New York, rather than Louisiana, law applies to the interpretation of the Marine policy.

The Marine policy includes a choice of law provision stating that all disputes arising under the policy are governed by federal admiralty law, and in the absence of such law, by New York law.[101]  Since no federal admiralty rule appears to govern the construction of maritime insurance contracts,[102] New York law governs the interpretation of the Marine policy under this provision.

The next question then is whether the Court should enforce the choice-of-law provision.

Federal courts in diversity cases apply the forum state's choice-of-law principles.[103]  The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either:

---

[100] *See Cont'l Ins. Co.*, 2016 WL 301681, at *1 (insurers paid for defense costs under P&I policy); *Chet Morrison*, 2015 WL 1221616, at *4-5 (imposing no duty to defend).
[101] Doc. 19-1 at 21.
[102] *See Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999) (citing *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 319-321 (1955)).
[103] *See Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[104]

Neither exception applies here.

With respect to the first exception, New York does not appear to have any connection to the parties or transaction. Liberty Mutual, a Massachusetts company, issued an insurance policy to River Road, a Louisiana company, who accepted the insurance policy in Louisiana.[105]

Nevertheless, the Sixth Circuit has held that the first exception should "rarely" apply and should only preclude, for example, "the application of 'foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge.'"[106] In this light, the Court declines to apply the first exception here where "[t]he selection of New York law to govern a financial instrument is hardly so 'adventurous' a choice."[107]

The second exception also does not apply. Even if Louisiana may have a greater interest than New York in this case as River Road suggests, New York law regarding insurance contract interpretation does not appear to be fundamentally contrary to Louisiana law.[108]

Therefore, the Court will apply New York law to determine whether the Marine policy imposes on Liberty Mutual a duty to defend or indemnify River Road in J-Way's suit.

---

[104] *Tele–Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987).

[105] Doc. 19-1 at 4.

[106] *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 n.2 (6th Cir. 2006).

[107] *Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 547 (S.D. Ohio 2012).

[108] *See Barabash v. Love's Travel Stops & Country Stores*, No. CIV.A. 10-4160, 2011 WL 4381730, at *4 (E.D. La. Sept. 20, 2011) ("The law applicable to interpreting insurance contracts is substantially similar in Louisiana and New York. Under both state's laws, insurance policies must be construed to give effect to the intent of the parties." (citations omitted)).

#### b. *No Duty to Defend or Indemnify Under the Watercraft Exclusion*

The Court finds that Liberty Mutual has no duty to defend or duty to indemnify in this case because of the Marine policy's watercraft exclusion.

Under New York law, an insurer bears the burden of demonstrating that a policy exclusion defeats an insured's claim by establishing that the exclusion is "stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."[109] Any ambiguity in such exclusion is construed against the insurer.[110]  However, the burden is on the insured to demonstrate that an exception to an exclusion applies where coverage rests on the application of such exception.[111]

The Marine policy states that Liberty Mutual has a duty to indemnify and a duty to defend River Road in certain circumstances.[112]  Liberty Mutual argues that the Marine policy's watercraft exclusion provision excludes any coverage in connection with J-Way's suit over its dredging vessel, which is a watercraft.[113]  The watercraft exclusion states:

> Unless specifically covered under this policy by endorsement this insurance does not apply: . . .
>
> 3. to bodily injury or **property damage arising out of the ownership, entrustment, maintenance, operation, use, loading or unloading of**:
>
>> 3.1 any automobile or **watercraft owned, operated, leased, chartered by or rented or loaned to any Insured** except as provided by the endorsements hereto specifically relating to the Named Insured's covered operations.[114]

River Road, however, argues that this watercraft exclusion is inapplicable because of a "Contractual Liability Endorsement" in the Marine policy that states:

---

[109] *Cont'l Cas. Co. v Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993); *see also Moneta Dev. Corp. v Generali Ins. Co.*, 212 A.D.2d 428, 429 (N.Y. App. Div. 1995).

[110] *See, e.g.*, *Ace Wire & Cable *140 Co. v Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983).

[111] *See Moneta Dev. Corp.*, 212 A.D.2d at 429; *Borg-Warner Corp. v. Ins. Co.*, 174 A.D.2d 24, 31 (N.Y. App. Div. 1992).

[112] Doc. 19-1 at 7.

[113] Doc. 52-1 at 12-15; Doc. 63 at 11-14; Doc. 66 at 9-11.

[114] Doc. 19-1 at 7-8 (emphasis removed and added).

-18-

In consideration of the additional premium of (included) and subject to the terms and conditions of the policy, it is agreed that coverage under this policy shall be extended as follows.

A. Only with respect to Covered Operations noted in the Declarations hereunder, ***the definition of incidental contract is extended to include contracts standard to the Named Insured's industry***. . . [115]

River Road argues that its lease with J-Way for a dredging vessel is an incidental contract since it is a contract standard to its construction business.[116]  River Road argues that the "Contractual Liability Endorsement" is essentially an exception to the watercraft exclusion.[117]

River Road also argues the watercraft exclusion should not be applied here because it conflicts with the "Marine Contractor Legal Liability Endorsement."[118]  River Road argues that this endorsement conflicts with the watercraft exclusion because the endorsement contemplates coverage for property damage to the dredging vessel that occurred while it was in River Road's control.[119]  Because there is a conflict, River Road argues there is an ambiguity in the Marine policy that requires the Court to construe the policy in favor of coverage.[120]

The Court disagrees with River Road.

To start, the "Marine Contractor Legal Liability Endorsement" does not conflict with the watercraft exclusion.  The endorsement actually excludes coverage for "loss or damage to property owned, or leased by the Insured, including owned or chartered watercraft."[121] As a result, the "Marine Contractor Legal Liability endorsement" has its own watercraft exclusion and is thus consistent with the watercraft exclusion in the general policy.

---

[115] *Id.* at 40 (emphasis removed and added).
[116] Doc. 53 at 13-15; Doc. 62 at 6-10; Doc. 65 at 5-9.
[117] *See supra* note 116.
[118] Doc. 65 at 7-8.
[119] *Id.* at 7 (citing Doc. 19-1 at 43 (extending coverage to "all sums which the **Insured** shall become legally obligated to pay as a marine contractor for . . . **[p]roperty damage** to property of others, while such property is in the care, custody or control of the **Insured**. . . ." (emphasis in original)).
[120] *Id.*
[121] Doc. 19-1 at 43-44 (emphasis removed and added).

Moreover, the "Contractual Liability Endorsement" cannot act as an exception to the watercraft exclusion.

In New York, exclusions in insurance policies "must be read *seriatim*, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another."[122]  In *Monteleone v. Crow Construction Co.*, the New York court found an exception to an exclusion clause did not create coverage. [123]  This was because the exception was inconsistent with the clearly applicable exclusion clause.[124]  Like in *Monteleone*, the Court also finds that the "Contractual Liability Endorsement" is not a valid exception to the watercraft exclusion because it is inconsistent with the watercraft exclusion.  Therefore, the watercraft exclusion must apply.

The parties do not dispute that the dredging vessel is a watercraft that would fall under the watercraft exclusion.  And the Court can find no case law to the contrary.[125]  Therefore, the Court finds the watercraft exclusion precludes coverage here, and Liberty Mutual has no duty to defend or duty to indemnify River Road in its suit with J-Way.

Accordingly, the Court **GRANTS** Liberty Mutual's motion for summary judgment on the duty to defend and duty to indemnify issues in the Marine policy, and **DENIES** River Road's motion for summary judgment on the same.[126]

### 3.  No Bad Faith

Lastly, no genuine dispute of material fact exists regarding River Road's bad faith claims.

---

[122] *Zandri Constr. Co. v Firemen's Ins. Co. of Newark*, 81 A.D.2d 106, 109 (N.Y. App. Div. 1981) (emphasis in original), *aff'd sub nom. Zandri Constr. Co. v Stanley H. Calkins, Inc.*, 54 N.Y.2d 999 (1981); *see also Hartford Acc. & Indem. Co. v Reale & Sons*, 228 A.D.2d 935, 935 (N.Y. App. Div. 1996).
[123] 242 A.D.2d 135, 141 (N.Y. App. Div. 1998).
[124] *Id.*
[125] *Cf. Stewart v. Dutra Const. Co.*, 543 U.S. 481, 481-82 (2005) (finding dredge was a watercraft for purposes of the Longshore and Harbor Workers' Compensation Act).
[126] Because the Court finds that Liberty Mutual has no duty to indemnify River Road under the Marine policy, it does not address whether the Marine policy requires Liberty Mutual to indemnify River Road for alleged lost rental income.

Here, the Court has found that Liberty Mutual had some reasonable basis for denying its duty to defend under the Hull policy, and for reserving its rights regarding the duty to indemnify. The Court has also found that Liberty Mutual had some reasonable basis for denying coverage under the Marine policy. Liberty Mutual shows evidence that it detailed its reasons for denying coverage in its correspondence with River Road.[127]

Therefore, under either Louisiana or New York law, River Road has failed to demonstrate Liberty Mutual's bad faith. River Road has provided no evidence of Liberty Mutual's arbitrary or capricious behavior as required under Louisiana law,[128] or Liberty Mutual's "disingenuous or dishonest failure" when denying coverage, as required by New York law.[129] There is no genuine dispute of material fact regarding River Road's bad faith claims.

The Court therefore **GRANTS** Liberty Mutual's motion for summary judgment on River Road's bad faith claims and **DENIES** River Road's motion for summary judgment on the same.[130]

### IV. CONCLUSION

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff J-Way's motion for summary judgment; **GRANTS IN PART AND DENIES IN PART** Liberty Mutual's motion for summary judgment; and **GRANTS IN PART AND DENIES IN PART** River Road's motion for summary judgment.

IT IS SO ORDERED

Dated: March 7, 2018

s/          *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[127] *See* Docs. 63-1, 63-2.
[128] *Calogero v. Safeway Ins. Co. of Louisiana*, 753 So. 2d 170, 173 (La. 2000) (bad faith claims where insurer's handling of a claim was "arbitrary and capricious").
[129] *Gordon v. Nationwide Mut. Ins. Co.*, 285 N.E.2d 849, 854 (N.Y. 1972) ("Bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract.").
[130] Liberty Mutual also asks this Court to determine the scope of its indemnity duties in light of a settlement reached by River Road and third party Defendant AGCS. Doc. 65 at 11-13. Since the terms of the settlement agreement have not been submitted to this Court, the Court declines to address this issue at this stage.